**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

SARA M. FITZWATER, *Administratrix of the Estate of Thomas Edward Fitzwater, Jr.*,

Plaintiff,

v. CIVIL ACTION NO. 2:26-cv-00423

PANTHER CREEK MINING, LLC, *doing business as Blackhawk Mining,*

Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the Plaintiff's *Complaint* (Document 1-1), the *Defendant's Motion to Compel Arbitration* (Document 5), the *Memorandum of Law in Support of Defendant's Motion to Compel Arbitration* (Document 6), the *Plaintiff's Response in Opposition to Defendant's Motion to Compel Arbitration* (Document 7), and the Defendant's *Reply in Support of Defendant's Motion to Compel Arbitration* (Document 8), as well as all attached exhibits. For the reasons stated herein, the Court finds that the motion should be denied.

## FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

The Plaintiff, Sara M. Fitzwater, Administratrix of the Estate of her late husband, decedent Thomas Edward Fitzwater, Jr., initiated this action in the Circuit Court of Nicholas County, West Virginia, on or about April 29, 2026. Defendant Panther Creek Mining, LLC, doing business as Blackhawk Mining, removed the matter to federal court on June 25, 2026.

Mr. Fitzwater, an experienced coal miner, was hired by Blackhawk to work at the Maple Eagle Complex mine in or around November 2023. He underwent a pre-employment physical examination, including a B-reading to screen for occupational pneumoconiosis, or black lung disease, around the time he was hired. Blackhawk told him the exam was normal and did not disclose any medical report from the exam to Mr. or Mrs. Fitzwater. The B-reading actually indicated stage two opacities of occupational pneumoconiosis. That finding, if disclosed, would have supported a worker's compensation application, as well as a transfer to a less dusty area of the mine. Because he was unaware of the results of the screening for black lung disease, Mr. Fitzwater continued to work in coal dust that exacerbated his condition until September 2025, when he developed increasingly severe breathing problems.

Mr. Fitzwater's final day in the coal mines was September 17, 2025. He underwent a stress test on September 18, then took vacation days from September 19-26. He planned to return to work on September 29, 2025, but had to be taken to the emergency room, where testing revealed massive pulmonary scarring consistent with advanced occupational lung disease. He remained hospitalized until October 3, 2025, when he was discharged to go home. His condition continued to deteriorate, and he returned to the hospital on October 12, 2025. He received a double lung transplant at the Cleveland Clinic on November 9, 2025. He passed away on December 4, 2025.

Mrs. Fitzwater "attempted to secure the medical records from Blackhawk to determine the cause of his illness and eligibility for benefits." (Compl. at ¶ 27.) Blackhawk issued a letter on December 8, 2025, classifying Mr. Fitzwater's separation from employment as an "involuntary resignation" and terminated his medical, dental, and vision benefits. Blackhawk continued to stonewall Mrs. Fitzwater's attempts to access her husband's records, including his pre-

employment physical. When informed that she sought the records in relation to Black Lung benefits, Blackhawk continued to block her access to the records. The estate "has been burdened with significant and ongoing medical debts," including $73,101.00 for emergency air transport and an anticipated charge exceeding $900,000.00 for the double lung transplant and post-operative care. (*Id.* at ¶ 35.) "These costs would otherwise have been covered by workers' compensation had the claim been timely filed upon the diagnosis Blackhawk concealed in 2023." (*Id.*)

In Count One of her Complaint, the Plaintiff alleges fraud, asserting that Blackhawk misrepresented the results of Mr. Fitzwater's pre-employment physical "with the intention of inducing Mr. Fitzwater to continue working in a hazardous environment without seeking workers' compensation benefits or Part 90 protection." (*Id.* at ¶ 39.) She alleges that Blackhawk's efforts to conceal the pre-employment B-reading before and after his death were intended to "prevent not only Mr. Fitzwater's own occupational disease claim, but also Mrs. Fitzwater's right to pursue those fatal benefits [available to the surviving dependents of workers who die from an occupational disease] as his surviving spouse and dependent." (*Id.* at 41.) She contends that Mr. Fitzwater's medical care would have been covered by workers' compensation, absent Blackhawk's fraud.

In Count Two, the Plaintiff alleges discrimination based on attempt to secure workers' compensation, asserting that Blackhawk "actively obstructed the Plaintiff's attempt to secure benefits by withholding the pre-employment physical records." (*Id.* at ¶ 46.) In addition, she contends that processing his separation from employment "as an 'involuntary resignation' effective on the date of his death" rather than as "a work-related fatality or occupational illness claim" was likewise designed to obstruct his estate's access to benefits. (*Id.* at ¶ 47.)

The Plaintiff seeks compensatory damages, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs.

Mr. Fitzwater signed an arbitration agreement on November 27, 2023. The Agreement purports to bind the signatory employees and "his or her representatives, heirs, beneficiaries, executors, and administrators." (Arbitration Agreement at 1) (Document 5-1.) It provides in bold:

> NOTICE: THIS AGREEMENT IS SUBJECT TO MANDATORY ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT ('ACT') AND ITS RELATED STATE COUNTERPARTS. ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATED TO THIS AGREEMENT AND/OR THE EMPLOYMENT RELATIONSHIP SHALL BE ARBITRATED PURSUANT TO THE ACT. BY SIGNING THIS AGREEMENT, THE EMPLOYEE UNDERSTANDS THAT HIS OR HER CLAIMS WILL BE SUBJECT TO ARBITRATION.

(*Id.*)

As relevant to the instant dispute, the Agreement also contains a "Coverage" section, which provides as follows:

> This Agreement between the Parties to arbitrate all disputes or claims of any kind includes, but is not limited to, claims arising under federal or state civil rights laws, claims of unlawful discrimination, retaliation or harassment based upon race, national origin, ancestry, disability, religion, sex, age, workers' compensation deliberate intent claims or history, veteran's status, or any other unlawful reason, and all other claims relating to employment or termination from employment. This shall also include any and all claims for wages, compensation or damages based upon any legal theory including, but not limited to, breach of contract, common law, statutory law or public policy. This Agreement does not, however, limit any right to file a charge with or assist any government agency, including the U.S. Equal Employment Opportunity Commission and the National Labor Relations Board, or the right to file a claim for workers' compensation benefits or unemployment insurance compensation;

> nor does it apply to employment benefit plans regulated by the Employee Retirement Income Security Act.

(*Id.*)

## APPLICABLE LAW

The Federal Arbitration Act (FAA) provides that:

> A written provision in any…contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction….shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Federal law strongly favors arbitration and interprets arbitration provisions under ordinary contract principles. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Thus, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id.* (internal citation omitted).

Sections 3 and 4 of the FAA grant federal courts authority to compel arbitration and issue a stay upon the motion of one of the parties to the agreement.

> In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (internal quotation marks omitted). Whether a contract is valid and enforceable is governed by the contract formation and interpretation principles of the forum state. *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998). A district court must "engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the

specific dispute falls within the substantive scope of that agreement." *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir.1997) (citations and quotation marks omitted). To challenge the validity of an arbitration clause within a contract a party must specifically challenge the arbitration clause, rather than the contract as a whole. *See Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445 (2006). The scope of an arbitration agreement must be construed with "due regard . . . to the federal policy favoring arbitration, and ambiguities . . . [must be] resolved in favor of arbitration." *Cara's Notions*, 140 F.3d at 569 (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)).

**DISCUSSION**

The Defendant argues that the Plaintiff's claims fall within the scope of the arbitration agreement. It contends that the arbitration agreement is valid, enforceable, and relates to interstate commerce. In addition, it argues that the arbitration agreement is not either substantively or procedurally unconscionable, emphasizing that other courts have upheld this agreement. Finally, it argues that the arbitration agreement, by its terms, is enforceable against Mr. Fitzwater's estate.

The Plaintiff contends that the provision within the arbitration agreement indicating that it does not limit any right to file a claim for workers' compensation benefits removes her claims from the scope of the arbitration agreement. She argues that her claims both relate to the Defendant's efforts to prevent Mr. Fitzwater and his widow from attaining workers' compensation benefits, and compelling arbitration of those claims "would recast the underlying contract to limit Mr. Fitzwater's 'right to file a claim for workers' compensation benefits,' which is precisely what the agreement says it does not do." (Pl.'s Resp. at 6.) Further, she contends that Sara Fitzwater's

independent fraud claim cannot be subject to an arbitration agreement she did not sign. She also contends that, even if the claims fell within the scope of the arbitration agreement, that agreement would be unenforceable as unconscionable, because "the Defendant obtained Mr. Fitzwater's assent while concealing the diagnosis that would have led him to decline the job." (*Id.* at 9.) She contends that the transportation worker exception to the FAA may be applicable, and pre-discovery dismissal is not appropriate.

The Defendant contends that the carve-out for workers' compensation claims permits only administrative remedies, not claims in state or federal court. It also argues that the complaint did not assert an independent fraud claim on behalf of Sara Fitzwater, only the Estate's fraud claim, which it argues is subject to the arbitration clause. The Defendant argues that the factual allegations in the complaint do not support the Plaintiff's assertion in her briefing that the arbitration agreement was procured by fraud or is otherwise unconscionable. Finally, it contends that the transportation worker exemption is not applicable because Mr. Fitzwater was employed as a Safety Manager, not in a role that could be classified as a transportation worker.

Although federal policy favors arbitration and "ambiguities as to the scope of the arbitration clause itself [are to be] resolved in favor of arbitration," "the FAA does not require parties to arbitration when they have not agreed to do so…nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476-78 (1989). The parties dispute whether the arbitration agreement excludes the Plaintiff's claims, which allege fraud and discrimination to prevent Mr. Fitzwater from applying for and securing workers' compensation.

The arbitration agreement specifies that it does not "limit…the right to file a claim for workers' compensation benefits." (Arbitration Agreement at 1) (Document 5-1.) The Complaint specifically alleges that Mr. Fitzwater "would have applied for workers' compensation benefits" if the Defendant had not fraudulently concealed the results of his physical examination. (Compl. at ¶ 15.) The Complaint also alleges that the Defendant continued to conceal the records from Mrs. Fitzwater, causing the Plaintiff to incur bills that "would otherwise have been covered by workers' compensation had the claim been timely filed upon the diagnosis Blackhawk concealed in 2023." (*Id.* at ¶ 35.) In other words, the Plaintiff's claim originates with Blackhawk's alleged interference with Mr. Fitzwater's right to file a workers' compensation claim, precisely the matter excluded from the arbitration agreement. If the arbitration agreement intended to preserve the right to file a workers' compensation claim without limiting an employee to arbitration, the Court finds that it logically follows that these claims, related to Blackhawk's prevention of Mr. Fitzwater and his widow's exercise of that right, fall within the exclusion. Fraudulent conduct to prevent Mr. Fitzwater and his widow from filing a worker's compensation claim, which is not subject to arbitration, is not conduct that the agreement contemplates as arbitrable. Thus, the Defendant cannot establish that a written agreement includes an arbitration provision "which purports to cover the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (internal quotation marks omitted). The Defendant's motion to compel arbitration should therefore be denied.

The Plaintiff contends in the alternative that the FAA may not govern based on the transportation worker exception. Section 1 of the FAA provides that the Act does not apply "to contracts of employment of seamen, railroad employees, or any other class of workers engaged in

foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court has explained that the § 1 exclusion applies to transportation workers who play a direct and necessary role in, or are actively engaged in, the transportation of goods across borders. *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024). "A transportation worker need not work in the transportation industry to fall within the exemption from the FAA provided by § 1 of the Act." *Id.* The Court has little information about Mr. Fitzwater's job functions. Therefore, the Court concurs with the Plaintiff that, if the arbitration agreement were otherwise applicable to this dispute, limited discovery related to Mr. Fitzwater's role would be necessary.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Motion to Compel Arbitration* (Document 5) be **DENIED**. Finding that this case may benefit from early mediation, the Court further **ORDERS** that this case be **REFERRED** to the Honorable Omar J. Aboulhosn, United States Magistrate Judge, for mediation.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Judge Aboulhosn, to counsel of record, and to any unrepresented party.

ENTER: November 24, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA